IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AKHTIAR MOHAMMAD, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-0996 (JR) |
| | ) | |
| GEORGE WALKER BUSH, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

## DECLARATION OF TERESA A. McPALMER

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information and belief, the following is true, accurate and correct:

1.    I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.    I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Akhtiar Mohammad that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or have been redacted. An OARDEC staff member redacted information that would personally identify U.S. Government personnel and foreign nationals in order to protect the personal security of those individuals. This staff member also redacted internee serial numbers because certain combinations of internee serial numbers with other information relate to sensitive internal and intelligence operations that is not suitable for public release.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: __1 June 2005__                    __Teresa A. McPalmer__
                                          Teresa A. McPalmer
                                          CDR, JAGC, USN



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 1 0 8 4

~~FOR OFFICIAL USE ONLY~~

2 0 MAR 2005

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #**█████

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #█████ meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

UNCLASSIFIED

25 Jan 05

MEMORANDUM

From:  Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # ███

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal #19 of 4 November 2004
       (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I
find that:

    a.  The detainee was properly notified of the Tribunal process and elected to participate.
*See* exhibit D-a.  The detainee also provided a sworn statement to the Tribunal.  *See*
enclosure (3).  The Tribunal considered the sworn statement in its deliberations.

    b.  The Tribunal was properly convened and constituted by enclosure (1).

    c.  The Tribunal substantially complied with all provisions of references (a) and (b).

    d.  The detainee requested 3 witnesses and documentary evidence:

        i.  The Tribunal found the first witness to be not relevant.  In my opinion, the
Tribunal acted properly in determining that the witness was not relevant.

        ii.  The Tribunal found the second witness to be relevant.  The witness provided a
sworn statement to the Tribunal.  *See* enclosure (3).  The Tribunal considered the
witness' testimony in its deliberations.

        iii.  The Tribunal found the third witness to be not relevant.  In my opinion, the
Tribunal should have determined that the witness' testimony was relevant, and
allowed the witness to testify.  However, the determination that the witness'
testimony to be not relevant was not dispositive of the Tribunal's determination
that the detainee was an enemy combatant.

UNCLASSIFIED

Subj:    LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
         FOR DETAINEE ISN # ███

iv. Finally, the Tribunal responded to the witness' request for "thousands of witnesses". In my opinion, the Tribunal properly determined that the witness request was not relevant to the proceedings as to whether the detainee was properly classified as an enemy combatant as outlined in references (a) and (b).

v. The detainee also requested two documents to be produced. The Tribunal determined that the documents were not relevant. In my opinion, should have found the documents to be relevant. In my opinion, the Tribunal's decision not to consider the requested evidence was not dispositive as to whether the detainee was an enemy combatant.

e.  The Tribunal's decision that detainee # ███ is properly classified as an enemy combatant was unanimous.

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

*Peter C. Bradford*

PETER C. BRADFORD
LT, JAGC, USNR

7 Feb 05

MEMORANDUM

From: Legal Advisor
To:   Director, Combatant Status Review Tribunal

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
      FOR DETAINEE ISN # ███

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal #19 of 4 November 2004
      (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal
in accordance with references (a) and (b). After reviewing the record of the Tribunal, I find that:

   a. The detainee was properly notified of the Tribunal process, elected to participate, and
   provided a sworn statement to the Tribunal.

   b. The Tribunal was properly convened and constituted by enclosure (1).

   c. The Tribunal substantially complied with all provisions of references (a) and (b).

   d. The detainee requested three witnesses and documentary evidence:

      i. The detainee claimed that the first witness would, in the words of his Personal
      Representative, "support him in every way." Seizing on the vagueness of this language
      and apparently unable or unwilling to ask for clarification, the Tribunal President found
      the first witness to be not relevant. In my opinion, both the Personal Representative and
      Tribunal President displayed a distinct lack of inquisitiveness and attention to detail in
      processing the detainee's request for this witness. They may have in fact gathered more
      information than what is described within the four corners of the Tribunal Decision
      Report, but if so, it should have been documented. Although I believe the handling of
      this witness request was substandard, there is reason to believe that even if the President
      had determined the witness to be relevant, the witness still may not have been reasonably
      available. The Personal Representative indicated in the Detainee Election Form that the
      "status" of the witness was unknown and indicated that she thought the witness was not
      reasonably available. No locating information for the witness was included in the
      Detainee Election Form – the place where it is customarily described. Given the very
      good chance that the witness was not reasonably available and the very remote chance
      that the witness' testimony would have changed the outcome of this tribunal, I do not
      recommend any corrective action based on the tribunal's handling of this witness
      request.

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # ███

ii.  The Tribunal found the second witness to be relevant and the witness testified under oath at the tribunal.

iii.  The Tribunal found the third witness's expected testimony to be duplicative of the second witness' testimony and therefore denied the request for the witness. In my opinion, the Tribunal should have determined that the witness' testimony was relevant and allowed the witness to testify. Certainly, having two witnesses testify, even if their testimony turned out to be duplicative, would have created a minimal imposition on the Tribunal. It could have also provided the Tribunal with worthwhile information. Indeed, there is a real question as to whether or not the two witnesses' testimony would have been duplicative. The witness who testified claimed that he did not personally know the detainee but only knew him as a "famous person." According to the Personal Representative, the witness who was denied by the Tribunal President had known the detainee for two years. At the very least, the Tribunal President should have revisited her decision when the first witness stated that he did not personally know the detainee. Apparently, the Tribunal President did not even do this. In any event, given the evidence against him, I do not believe that the detainee could have been prejudiced by the Tribunal President's faulty decision and do not recommend any corrective action.

iv.  Finally, the Tribunal treated the witness' statements that he could have "thousands of witnesses" as a witness request. The Tribunal President denied this "request" as not relevant. In my opinion, there was no need for a determination at all since this was not a witness request.

v.  The detainee also requested two documents to be produced. The first document was a "Itihad Islami" identification card. The detainee claimed that the card would prove he was a member of the organization. The Tribunal President determined that the document was not relevant because his membership in the organization was not in dispute. In my opinion, this was the correct ruling. The second document was an al Qaida arrest document that the detainee claimed would prove that he had been arrested by al Qaida. The Tribunal President determined that the timing of the alleged arrest did not relate to any allegations on the unclassified summary of the evidence and was therefore not relevant. In my opinion, given the small amount of information about this document the Tribunal President did not abuse her discretion in making this determination.

e.  The Tribunal's decision that detainee # ███ is properly classified as an enemy combatant was unanimous.

f.  The detainee's Personal Representative was given the opportunity to review the record of proceedings and declined to submit comments to the Tribunal.

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

UNCLASSIFIED

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
        FOR DETAINEE ISN #███

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

JAMES R. CRISFIELD JR.
CDR, JAGC, USN

3



### Department of Defense
### Director, Combatant Status Review Tribunals

4 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #19

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

**MEMBERS:**

██████████████ Colonel, U.S. Army; President

██████████████ Commander, U.S. Navy; Member

██████████████ Major, JAGC, U.S. Army Reserve; Member (JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

30 November 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN# ███

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ███████

CHARLES E. JAMISON
CAPT, USN

### (U) <u>Combatant Status Review Tribunal Decision Report Cover Sheet</u>

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ___#19___

(U) ISN#: ___█████___

Ref:    (a) Convening Order for Tribunal #19 of 04 November 2004 (U)
         (b) CSRT Implementation Directive of 29 July 2004 (U)
         (c) DEPSECDEF Memo of 7 July 2004 (U)

Encl:   (1) Unclassified Summary of Basis For Tribunal Decision (U)
         (2) Classified Summary of Basis for Tribunal Decision (S//NF)
         (3) Summary of Detainee/Witness Testimony (U)
         (4) Copies of Documentary Evidence Presented (S//NF)
         (5) Personal Representative's Record Review (U)

(U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the Detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

(U) The Tribunal has determined that Detainee #█████ is properly designated as an enemy combatant as defined in reference (c).

(U) In particular, the Tribunal finds that this Detainee is associated with forces that are engaged in hostilities against the United States or its coalition partners, and that this Detainee participated in hostilities against the United States or its coalition partners, as more fully discussed in the enclosures.

(U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Colonel, U.S. Army
Tribunal President

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

## (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____ #19

ISN #: _____ ▓▓▓▓▓

## 1. Introduction

As the Combatant Status Review Tribunal Decision Report indicates, the Tribunal has determined that this Detainee is properly classified as an enemy combatant and is associated with forces that are engaged in hostilities against the United States and its coalition partners. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal. Any classified evidence considered by the Tribunal is discussed in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is associated with forces that are engaged in hostilities against the United States and its coalition partners. The Detainee traveled from Gardez to Kabul, Afghanistan in May 2003. The Detainee is a member of Itihad Islami. The HIG is listed in the Terrorist Organization Reference Guide as having long-established ties with Usama Bin Ladin. The Detainee had a HIG identification card on his person when he was captured. The Detainee received training on AK-47s, Rockets, RPGs, and also driver/operator training on APCs during his military service. The Detainee participated in hostilities against the United States or its coalition partners. The Detainee was the HIG commander in charge of the Seyyed Karam district. The Detainee participated in planning an attack on the governor in Seyyed Karam, Afghanistan. The Detainee participated in the February 2003 rocket attacks against U.S. forces in Gardez, Afghanistan. The Detainee was arrested in May 2003 in Gardeyz, Afghanistan. The Detainee was found to have ammunition for a U.S. manufactured sniper rifle.

The Detainee chose to participate in the Tribunal process. Prior to the convening of the Tribunal, the Personal Representative requested three witnesses. The Tribunal allowed one of these witnesses, ▓▓▓▓▓▓▓▓▓▓ to testify. The other witness requests were denied due to a lack of relevancy and/or duplicity. Prior to the start of the Tribunal, the Detainee did not request any documentary evidence. Once the Tribunal convened, the Detainee mentioned that he "had thousands of witnesses who could testify on my (his) behalf." Based upon this statement, the Tribunal recessed to allow the Personal Representative an opportunity to discuss any outstanding witnesses and/or documentary evidentiary requests by the Detainee. After consultation with the Detainee, the Personal Representative explained the additional requests to the Tribunal. This discussion occurred during the recess. Essentially, the Detainee requested additional witnesses from

his local area in Afghanistan who would testify to his "good character". As evidence of character is not relevant to the enemy combatant issue, these requests were denied. The Detainee also requested the production of two documents. The Detainee sought the production of his identification card found on him at the time of capture. The Detainee also requested an arrest document that would reportedly show that Al Qaida captured him in or around September 2002. Both of these documents were denied on relevancy grounds. For further discussion, see item "4".

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

  a. Exhibits: D-a, R-1 through R-11

  b. Testimony of the following persons: ██████████████

  c. Sworn statement of the Detainee

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested the following witnesses be produced for the hearing:

| Witness | President's Decision | Testified? |
|---|---|---|
| ██████████ | Denied - not relevant | No* |
| ██████████ | Allowed | Yes |
| ██████████ | Denied – duplicative of ██████ | No** |
| "1000's of Witnesses" | Denied – not relevant | No*** |

*The proposed testimony for this witness was that he would "support him (Detainee) in every way". This anticipated testimony would not provide any useful information to the Tribunal related to the enemy combatant issue. Due to this lack of relevancy, the Tribunal President denied this request prior to the start of the hearing.

**The proposed testimony of ████████ would have duplicated the testimony of ██████, an approved witness. In light of this fact, the Tribunal President denied this witness request due to the fact ██████ would not provide any additional information for the Tribunal.

***As discussed in the "Synopsis of Proceedings" (item "2"), once the Tribunal convened, the Detainee mentioned he had "thousands of witnesses" who would essentially testify to his good character. As character evidence is not relevant to the enemy combatant issue, this vague witness request was denied.

The Detainee requested the following additional evidence be produced:

| Evidence | President's Decision | Produced? |
| --- | --- | --- |
| Itihad Islami Identification | not relevant | no* |
| Al Qaida Arrest Document | not relevant | no** |

\* This document would reportedly show that the Detainee was a member of Itihad Islami. As this fact was not in dispute, the production of the actual ID document had no known relevancy. Hence, the Tribunal President denied this request for production with the proviso that the request would be reexamined if it proved relevant at a subsequent time during the proceedings. As anticipated, the actual production of this document had no relevancy at any time later in the proceedings. Therefore, the document was not produced.

\*\* This document would allegedly show that al Qaida operatives arrested the Detainee in or around September 2002. According to the Detainee, this document would also show he was held captive by al Qaida for approximately one month. Based upon the alleged timing of this arrest and imprisonment by al Qaida, this request was denied for a lack of relevancy. Specifically, the timing of this alleged al Qaida arrest did not relate to any of the allegations on the unclassified summary. Therefore, the Tribunal President denied this document request due to lack of relevancy.

## 5. Discussion of Unclassified Evidence

a. The recorder offered Exhibits R-1 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the sworn testimony from both the Detainee and ▓▓▓▓▓▓▓▓. A summarized transcript of the Detainee's sworn testimony and ▓▓▓▓ is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee testified that he was a member of Itihad Islami. The Detainee fought in "Jihad" for Afghanistan against the Russians. He received some military training but denied training on RPG's or rockets. He admitted to training on tanks during the Jihad against the Russians. He denied being either a HIG

leader or a HIG member. He denied participating in the February 2003 rocket attacks against the United States. He was arrested in May 2003 in Gardeyz, Afghanistan. The U.S. manufactured sniper rifle did not belong to the Detainee. The Detainee is a native Afghani who lived as a refugee in Pakistan since the Jihad against the Russians. His only prior occupations involved working for the Afghanistan Government. He has fought "with the Northern Alliance against the Taliban." He was arrested because he supported the Government of Afghanistan, which made him a target, by anti-government forces. For further details regarding the Detainee's testimony, see Enclosure (3).

    c. Detainee's witness, ███████████████ testified under oath before the Tribunal. In sum, █████ testified that he knew the Detainee "for a long time because he (the Detainee) was a famous person". The Detainee was famous for his role in Jihad against the Russians and his opposition to the Taliban. This witness denied any personal contact with the Detainee. He further elaborated that he did not maintain a friendship with this Detainee or any other type of relationship with the Detainee. The primary purpose of Itihad Islami was to defeat the Russians. This witness did not know the Detainee's occupation. The Detainee is a Sunni Muslim. The witness is a Shiite Muslim. The HIG worked with the Government of Afghanistan. This witness did not observe the Detainee on a regular basis. Other than as a "famous person", this witness did not even know the Detainee. This witness did not provide the Tribunal with any relevant information concerning the enemy combatant issue. Therefore, this testimony was unpersuasive.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed appropriate.

    b. The Detainee understood the Tribunal proceedings. He acknowledged that he understood his rights and actively participated in the hearing.

    c. The Detainee is properly classified as an enemy combatant because he is associated with forces that are engaged in hostilities against the United States and its coalition partners.

## 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,



Colonel, U.S. Army
Tribunal President

UNCLASSIFIED/

## Summarized Unsworn Detainee Statement

*The Tribunal President read the hearing instructions to the detainee. The detainee confirmed that he understood the process and had no questions.*

*The Recorder presented Exhibits R-1 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*The detainee originally asked for three witnesses and several thousand more from his country. The Tribunal President stated a recess is needed so that the detainee could talk to the Personal Representative about the witnesses. After a short recess the Detainee stated that he could have one witness that will testify on his behalf at this tribunal. Since the other witnesses were only going to be character witnesses and character evidence is not relevant to the determination of enemy combatant status, the other witness requests were denied. Only one witness would be allowed in this tribunal.*

Tribunal President: The detainee requested some documents during the recess. The first one was an arrest document from al Qaida.

Detainee: Yes, I gave my file, my chart with all my information, about my situation and my case. I think that nobody has seen or read my file yet.

Tribunal President: I can tell you for the purposes of this panel, the only information we have on you right now is the Unclassified Summary. We use two things to determine your enemy combatant status. One is information given to us by the recorder and the second thing, any oral statement of you or in this case of your witness. So, in reference to the Al Qaida information based on the alleged timing of the arrest and your imprisonment, this request is denied because it doesn't address the timing allegation on the allegation summary.

Detainee: The reason it may help me, I am not involved with HIG Islami and I am not Al Qaida and I was in Itihad Islami. Now half of the HIG Islami are working for the new government and they are working as a minister, a president, and a lot of important jobs now that Pakistan has a new government and working for new government.

Tribal President: That is information that you can provide us. That is information that we don't know.

Detainee: There are three ministers right now working for the government. One of the big commanders from HIG Islami is working for the government. Like minister for the handicap, there was a minister that works the border of Afghanistan and a minister for the minerals and manufactures from the HIG Islami. The security of defense is from Islami.

UNCLASSIFIED/

Tribal President:  We will give you an opportunity to testify in just a few minutes.

Tribal President:  The second document that you ask for was an ID document.

Detainee:  Yes

Tribal President:  We have attempted to find it but have exhausted our resources here. Essentially even if we find it, it does not seem to provide us a lot of additional information.  If at a later point its production becomes meaningful to your enemy combatant status, we will examine your request.

Detainee:  Thank You.

*Tribal President:  You may now present any evidence to this tribunal and you have the assistance of your Personal Representative in doing so.*

Detainee:  I will forward the telephone number that you can call.  They will bring you the witness to get the evidence and the documents.  They will prepare it and bring it to Gardeiz or if you want it in Kabul. I can provide it in both cities.

Tribal President:  We have already gone over the request for information; we can take your oral statement that something exists.  At this time would you like to make a statement under oath?

*The detainee took the Muslim oath.*

Tribal President:  Would you like your Personal Representative to help you with the points?

Detainee:  If I am telling the whole information about me, it's very long and will take a lot of time so do you want me to start from the beginning?

Tribal President:  It can take as long as you want to take, we are willing to listen.

Detainee:  I am referring to all this unclassified information that was in here.  I am thinking about these allegations are just accusations, So you want me to start on each of them or you want me to start on al Qaida or HIG's?

Tribal President:  How about we start with the points first and if you think some information is not there that you think we should have, you can provide that afterwards.

Detainee:  That's ok with me.

*The Personal Representative read the accusations to the detainee so that he could respond to the allegations.  The allegations appear in italics, below.*

UNCLASSIFIED/███

*3.a.1. The detainee traveled from Gardeiz to Kabal, Afghanistan in May 2003.*

Detainee: Actually in Gardeiz I was in my room, when I heard a shotgun from my neighbor's house. They were American, they used the fire and they shot someone. Then I heard some noise or conversations outside. I though that was their business and they might be talking to someone, and then I was still in my room. Then after 20 minutes they came to my room and they captured me and they took me to an American confine. It was like 2:30 at night. In Gardeiz, nobody asked me any questions. Nobody ever did any interrogations on me. If they asked me in Gardeiz where they captured me, I would have provided these witness and got all this for them like the commander of the military division, and the command of the police, the governor of Gardeiz. I would have provided all of these people as my witness. That night during the night they moved me to Baghram. In Baghram I showed my ID card, which my ID card showed I belonged to Itihad Islami. I was one of the members of Itihad Islami organization. Actually I show all my enemies to them. They were all the people against the new government, against any government. They were not supporting the government and all that the power in Seyyed Karam district. They were all commanders of ███████. I spent 2 months in Baghram and they moved me to Cuba. The person whose name was ██████ he was the one who reported me to Americans. He was one of the enemies of the government and actually he had control of this district. They had two big fights in Gardeiz.

*3.a.2. The detainee is a member of Itihad Islami.*

Detainee: Yes, during the Jihad I was a member of Itihad Islami.

*3.a.3. The HIG is listed in the Terrorist Organization Reference Guide as having long-established ties with Usama Bin Ladin.*

Detainee: I have no involvement with HIG Islami.

*3.a.4. The detainee had a HIG identification card on his person when he was captured.*

Detainee: No, I don't have any ID card from HIG Islami, it was from Itihad Islami.

*3.a.5. The detainee received training on AK-47s, Rockets, RPGs and also, driver/operator training on APCs during his military service.*

Detainee: Before the communist came to Afghanistan during the communist regime 25 year prior to the regime, I was doing military service for the government. I didn't get training in RPG's or anything. I had training at ████████. It was a camp.

*3.b. The detainee participated in hostilities against the United States or it's coalition partners.*

UNCLASSIFIED/█████

Detainee: I didn't participate in any fight against the United States or it's coalition and I didn't even know about this. I didn't even know about this fight against America.

*3.b.1. The detainee was the HIG commander in charge of the Seyyed Karam district.*

Detainee: No, I wasn't commander of HIG. The commander of HIG Islami his name was █████ I was the commander of Itihad Islami.

*3.b.2. The detainee participated in planning and attack of the governor in Seyyed Karam, Afghanistan.*

Detainee: No, I didn't participate in the attack. That was the government attacked this district. The government did that.

*3.b.3. The detainee participated in February 2003 rocket attack against U.S. forces in Gardeiz, Afghanistan.*

Detainee: On that day I wasn't in Gardeiz, I was in Pakistan.

*3.b.4. The detainee was arrested in May 2003 in Gardeiz, Afghanistan.*

Detainee: Yes

*3.b.5. The detainee found to have ammunition to a U.S sniper rifle.*

Detainee: Actually I had an involvement with an association with the military division in my district. These people came to my house and they had a lot of weapons with them. I am thinking they probably dropped it. That didn't belong to me.

***The Personal Representative and the Recorder had no further questions.***

Tribunal Members' questions

Q. After the attacks on the United States, September 11, what was your position in Afghanistan?
A. At that time I was running away from the Taliban. I was in my house in Pakistan. I was in my house when I found out about the attack in America.

Q. At some point did you come back to Afghanistan?
A. When the Americans got rid of Al Qaida, I went back to Afghanistan.

Q. When you came back to Afghanistan what did you do?
A. I was asking the government for a job.

UNCLASSIFIED/███

Q. Did you get a job in the government?
A. Yes, they were going to give me a job; but in the mean time, I got captured by al Qaida.

Q. You were captured by al Qaida for how long?
A. One month.

Q. Then what did you do after that?
A. I had to give them a guarantee contract that I would not work for the government for nine months.

Q. Why was that?
A. Because all these people from the state was supporting me. If I went to the government, all these people will go with me. All those people were bad people. They were controlling the street. They were not supporting the government. They were against the government.

Q. What did you do to support yourself?
A. From which point?

Q. After you were arrested by al Qaida?
A. I didn't work for eight months; I spent eight months in my district. Then after eight months, I came to Gardeiz to go back to my job. Then I got captured by the Americans.

Q. During those eight months what were you doing?
A. I was in Pakistan at my house with my family.

Q. What did you do in Pakistan?
A. I just stayed at home.

Q. How did you support yourself in Pakistan?
A. We were refugees so we were getting welfare for rations and my brother was working. He was working for minimum wage as a laborer and he was supporting me too. He was helping with money.

Q. Itihad Islami, what is that?
A. Itihad Islami was one of seven organizations in Afghanistan. (Difficult to understand on the tape however, the Detainee listed the seven parties: HEZB-E ISLAMI, another Hezb-e Islami, Ittihad-e Islami, Harakat-e Inqilab-e Islami, Jebhe-ye Nejat Milli, and Mahaz-e Islami.)

Q. What did they do?
A. They were political parties like in America. They were doing jihad against the Russians.

UNCLASSIFIED ███

Q. After you were released from al Qaida, did Itihad Islami have weapons?
A. All of Itihad Islami joined the government; they fought with the government against al Qaida and Taliban for five years.

Q. HIG, what do you know about them?
A. HIG was always against Itihad Islami during the time of the Jihad, during many times HIG was against Itihad Islami organizations.

Q. It is another political party?
A. Yes.

Q. The rocket attacks in February 2003, what do you know about that?
A. I have no information about that. I think about it a lot and I cannot remember any attack of rockets in Gardeiz.

Q. Did you have a home in Afghanistan and Pakistan?
A. Yes, my brother lived in Afghanistan and I lived in Pakistan. I lived in Pakistan as a refugee.

Q. The only occupation you had was working for the government?
A. Yes.

Q. Did you ever belong to a charitable organization?
A. No, I haven't. I was asking for charity.

Q. The Itihad Islami, Did you ever bear arms with this group?
A. During the Jihad?

Q. After the Jihad?
A. No, after the Jihad we gave all our weapons to the government.

Q. You didn't fight Jihad against American or the Northern Alliance?
A. No, I didn't do any Jihad against American. Actually I was with Northern Alliance during the time they were fighting the Taliban.

Q. Have you ever met Osama Bin Laden?
A. I have never seen him.

Q. Have you ever worked with or supported al Qaida?
A. No.

Q. Why do you believe you were arrested?
A. The reason I am thinking I was captured was the people against the government. I was supporting the government, I was recruiting people for the government and there was

al Qaida commander in the district he had control of the district. He was the one who reported me.

Q. This was after the Taliban was driven out by the Americans?
A. Yes, they still had the district under their control.

Q. Northern Alliance had not taken over that district yet?
A. No.

Q. Were you arrested by yourself or with anyone else?
A. By myself.

Q. You made a comment about the attacks against the governor. You felt the government attacked the governor?
A. Yes, those people were still in the power. They were the ones against the government. They attacked this district and they had control over the district.

Q. Power struggle?
A. The government wanted to have control of all the locations in Afghanistan. They wanted to have this district still in their control.

Q. Once the United States and the Northern alliance moved the Taliban out of Afghanistan why did you go back to Pakistan?
A. I lived in Pakistan for almost twenty-five years.

Q. Did you not feel comfortable after the coalition had driven the Taliban out?
A. At that time I was living at the camp, they were the ones in control. I was there with all my enemies and so I couldn't really live there, so I went to live in Pakistan.

Q. What does Jihad mean to you?
A. I don't know what that means; jihad was fighting against Russia. That is why we were fighting with Russia, they were trying to take Afghanistan. So we had to use Jihad against them.

Tribunal President's questions.

Q. Is it my understand you were born in Afghanistan?
A. Yes.

Q. Are you from Seyyed Karam district originally?
A. Yes.

Q. Is it close to Gardeiz?
A. It must be fifteen or sixteen kilometers from Gardeiz.

Q. When you decided to return to Afghanistan what made you go to Gardeiz?

UNCLASSIFIED/█████

A.  Gardeiz was under control of the government it was very safe and secure. ████
████ my enemy was there still and they had control of ██████████. I might have gotten killed so I went to Gardeiz to be safe.

Tribunal President:  Thanks for your participation today.

Detainee:  Thanks for your help too.

Tribunal President:  Is there anything else you would like to tell us.

Detainee:  If you need any more witness or evidences to help my case I can write down the phone number. You can call to get information about me.

*Tribunal President explains the process of the use of the witness to the detainee.*

Tribunal President:  Please state your name.

Witness: ███████████████        ISN# ██████

*The Witness takes the Muslim Oath.*

Personal Representative:  How long have you know this detainee?

Witness:  It has been a long time, he is a very famous man.  Everybody knew him and I knew him too as a famous man.

Personal Representative:  You stated that he was a famous man. What is he famous for?

Witness:  He was famous for his Jihad against Russia and his fighting against the Taliban. Especially during the Jihad against Russia.

Personal Representative:  Was he a member of HIG?

Witness:  No, he was a member of Itihad Islami. Not HIG Islami.

*The Personal Representative and the Recorder had no further questions.*

Tribunal Members' questions

Q.  You said that you have known this gentleman for a long time because he is famous? However do you know him personally?
A.  Yes, not only did a lot of people known him during the Jihad, we worked together too.

Q.  You were fighters together against the Russians?
A.  Not together, but yes the same time, but a different location.

UNCLASSIFIED/

Q. After the Jihad did you have personal contact with this gentleman?
A. Yes, all us commanders knew each other, not personally though.

Q. What did you do in Afghanistan?
A. I was Mujihadeen too, fighting against the Russian at the time of Jihad. When Taliban came to Afghanistan, at that time I was in Pakistan.

Q. How about when the U.S. forces took over in Afghanistan, what did you do then?
A. I was still a refugee in Pakistan and during the Karam Assembly, I was a member of the Karam Assembly.

Q. Did you have regular contact with this gentleman?
A. I am sorry, I was in Iran not Pakistan. Most of them are refugees that were in Pakistan. When the Americans came, I was a refugee in Iran.

Q. How well do you know him other than knowing of him? What was your personal relations with this gentleman?
A. We do not have any personal relations. During the Taliban regime because I was against the Taliban and I was a commander and all of the commanders were against the Taliban too. So I knew who was working for the Taliban and who was against the Taliban and who stayed home. This is how I knew most of the commanders.

Q. You didn't have any daily interaction with the detainee?
A. No.

Q. What is the purpose of the Itihad Islami?
A. Itihad Islami means union of the people of Islami, Jihad against Russia. It was created against the Russian politics group during the Jihad against Russia to make Afghanistan free of Russian power.

Q. After the Russians were defeated, what was their primary purpose?
A. After the Russians, they join the Rabani's government, the Rabani's politics party. During the Taliban, they were against the Taliban, they were an opposite group and Itihad even joined the Masoud's politics party. These are the things I know about the Itihad Islami. Since I knew this was their goal.

Q. Did the detainee support the Northern Alliance?
A. Yes.

Q. After the Jihad where did the detainee work until the time he was captured?
A. I don't know his personal things he was doing. During the Taliban, I know he was a refugee in Pakistan. He was one of the opposite groups of Taliban. I know the Taliban robbed his house and took all his stuff, I know that for sure too. I know something else, he got captured by the opposite group that was against the government and then they

UNCLASSIFIED/

made him sign a contract that he could not work for the government. In addition to that, he still wanted to go work for the government.

Q. Was this opposite group al Qaida?
A. There were people who wanted their own government, opposite of the new government.

Q. Did you know if the detainee had any problem with Al Qaida?
A. I knew he was against Al Qaida. I don't know his problem with Al Qaida. I don't know the small details. I know the common things.

Q. Were you captured with the detainee?
A. No, we are not from the same village or the same tribe. He is Pastu and I am Farsi and we don't have any personal relationship and we are not friends, the reason I say that, I want you to understand and know about the fact and the truth about this detainee. He is Suni and I am Shite, I want to tell you the truth. I do know the truth about him.

Q. You say you don't have a close relationship with him, not a good friend?
A. Yes.

<u>Tribunal President's questions.</u>

Q. I have one question that you said he is not a member of HIG. Would you say that the HIG supports the Northern Alliance or the Taliban?
A. The HIG, most of them work for the government or joined the government itself, I don't know if he is against the government or if his position changed. The people that I knew that were Itihad Islami during the Jihad and now they have good positions in the government, some of them are in the government.

*The Tribunal President confirms that the detainee had no further evidence or witnesses to present to the Tribunal. The Tribunal President explains the remainder of the Tribunal process to the detainee and adjourns the Tribunal.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



Colonel, United States Army
Tribunal President

## DETAINEE ELECTION FORM

**Date:** _____4 Nov 04_____

**Start Time:** _____14:05_____

**End Time:** _____15:15_____

ISN#: _____████_____

Personal Representative: ████████████MAJ. USAF _____
(Name/Rank)

Translator Required? _YES_          Language? _____PASHTU_____

CSRT Procedure Read to Detainee or Written Copy Read by Detainee? _____YES_____

--------------------------------------------------------------------------------

**Detainee Election:**

[X]    **Wants to Participate in Tribunal**

[  ]    **Affirmatively Declines to Participate in Tribunal**

[  ]    **Uncooperative or Unresponsive**

**Personal Representative Comments:**

Polite, calm and cooperative. Asked  questions and is requesting to have 3 witness that are at GTMO. He addressed the allegation and made statements to each one. DetaineeISN #██ will make oral statement at Tribunal. The 3 witnesses from GTMO with state that detainee ISN#██ did not join any group to fight against the United States.

--Witness #1-████████████Status is unknown –You may check JDIMS--not reasonably available. Detainee has known this person for over 20 yrs and he will support him in every way.

--Witness #2-████████- ISN# ████-████- Known for 2 yrs. Will state that he has not joined any group to fight against the Americans. Will answer all questions

--Witness#3-████████████-ISN# ████-████-Will answer any questions and state that he is a good person and that he did not join any group, he worked with the government only.

Personal Representative ████████████████████

Exhibit D-a

**UNCLASSIFIED**

**Combatant Status Review Board**

TO:  Personal Representative

FROM:  OIC, CSRT (28 October 2004)

Subject:  Summary of Evidence for Combatant Status Review Tribunal – MOHAMMAD, Akhtiar

1.  Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2.  An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.  This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3.  The United States Government has previously determined that the detainee is an enemy combatant.  This determination is based on information possessed by the United States that indicates that he is associated with forces that are engaged in hostilities against the United States and its coalition partners.

   a.  The detainee is associated with forces that are engaged in hostilities against the United States and its coalition partners.

      1.  The detainee traveled from Gardez to Kabul, Afghanistan in May 2003.

      2.  The detainee is a member of Itihad Islami.

      3.  The HIG is listed in the Terrorist Organization Reference Guide as having long-established ties with Usama Bin Ladin.

      4.  The detainee had a HIG identification card on his person when he was captured.

      5.  The detainee received training on AK-47s, Rockets, RPGs, and also  driver/operator training on APCs during his military service.

   b.  The detainee participated in hostilities against the United States or its coalition partners.

      1.  The detainee was the HIG commander in charge of the Seyyed Karam district.

      2.  The detainee participated in planning an attack on the governor in Seyyed Karam, Afghanistan.

      3.  The detainee participated in the February 2003 rocket attacks against U.S. forces in Gardez, Afghanistan.

      4.  The detainee was arrested in May 2003 in Gardeyz, Afghanistan.

**UNCLASSIFIED**

EXHIBIT  *R1*

UNCLASSIFIED

5. The detainee was found to have ammunition for a U.S. manufactured sniper rifle.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

UNCLASSIFIED/

# Personal Representative Review of the Record of Proceedings

I acknowledge that on /8 November 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN # ████

✓ I have no comments.

___ My comments are attached.



████████████ MAJ, USAF
Name

Signature

18 Nov 2004
Date

ISN # ████
Enclosure (5)